T.C. Memo. 1999-25

UNITED STATES TAX COURT

DANA L. MCNAUGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24434-97.                    Filed January 29, 1999.

<u>John A. Cohan</u>, for petitioner.

<u>Ann M. Murphy</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]  Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable years in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for 1994, 1995, and 1996 in the amounts of $8,528, $8,671, and $8,479, respectively.

The issue for decision is whether petitioner's Appaloosa horse breeding and selling activity was an activity "not engaged in for profit" within the meaning of section 183.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Portland, Oregon, on the date the petition was filed in this case.

Petitioner was graduated from Oregon State University with a degree in psychology. She took courses in accounting, marketing, finance, advertising, and public speaking. She later earned a degree in nursing.

Petitioner worked no less than 40 hours per week as a registered nurse for Oregon Health Sciences University (OHSU) during the taxable years in issue. She received employee wages from OHSU during 1994, 1995, and 1996 in the amounts of $44,123.80, $44,700.50, and $47,904.24, respectively. OHSU is located five blocks from petitioner's home.

Petitioner devoted around 15 hours per week to a billing service that she operated for oncology surgeons until the mid-1990's. Her net income from the billing service for her 1990 through 1995 taxable years was $18,360, $14,553, $13,763, $10,950, $1,829, and $124, respectively. She completely ceased this activity during 1995 because the surgeons for whom she

provided her billing service either retired or moved out of the area.

Petitioner is the manager of the apartment complex in which she lives. She receives a rent-free apartment in return for collecting rents, coordinating repairs, and showing vacant units. In addition, she has received as much as $3,000 in 1 year for performing certain tasks around the apartment complex, such as painting and making minor repairs. She devotes approximately 5 hours per week to this activity.

Petitioner first became involved with Appaloosa[2] horses (Appaloosas) as a teenager in the early 1960's while working as an apprentice to trainer Phil Hansen. Petitioner helped Mr. Hansen prepare the Appaloosas for shows. Her tasks included feeding them, saddling them for training, and cooling them down after workouts. Petitioner did not personally ride the Appaloosas.

Petitioner has owned and bred only registered Appaloosas since the age of 15, when she purchased her first registered Appaloosa. This horse was an older broodmare which had previously delivered several foals, one of which had been sold to a person from England. This broodmare delivered several more foals which were trained by Mr. Hansen. Petitioner paid Mr. Hansen in part with her earnings from her summer employment. She

---

[2] An Appaloosa is a rugged saddle horse developed in Western North America from stock of Spanish origin and is distinguished by its mottled skin and patches of white hair.

was able to sell several of the foals, one to a person from New York.

In 1981, petitioner decided to expand her horse breeding activity from a hobby to a business and began claiming tax deductions for her expenses. This decision was a result of conversations that she had with prominent members of the National Appaloosa Horse Club, which acts as the official registry for Appaloosas. Petitioner thereafter began breeding more than one broodmare simultaneously. She also became very active in the Appaloosa Horse Club of Oregon. She has served as its secretary and has organized and served as a judge at Appaloosa shows.

Petitioner has become knowledgeable in the different pedigrees and breeding lines of Appaloosas by consulting with other individuals in the business of breeding and training Appaloosas. Her business plan focuses on breeding Appaloosas in the $5,000 to $15,000 price range for sale to young riders and nonprofessional adult riders. Petitioner believes that her target market is broader than the market for horses in the $30,000 to $50,000 price range and will allow her to make a profit by reason of a greater number of sales. At the same time, she believes that her target market is more profitable than the market for less expensive horses because the profit margin for lower quality horses is minimal. She therefore seeks to breed Appaloosas with quiet dispositions that are easily trained and are suitable for the amateur riders in her target market.

Petitioner has never owned a farm or other real estate. She boards her broodmares and foals at several locations in Oregon and one location in Arizona.[3] Petitioner decides which stallions will breed with her broodmares. She chooses trainers for her foals by matching each foal's heritage and aptitude to the trainers' expertise.

Petitioner budgets 30 hours per week for her Appaloosa breeding and selling activity and admits that it consumes nearly all of her personal time. She maintains complete records of her expenses in a single entry ledger and places all of her receipts in envelopes categorized by type of expense. The amounts claimed on her returns were derived directly from these records.

Petitioner has a separate bank account for her horse breeding and selling activity. The account is in petitioner's name at a bank other than the bank at which she maintains her personal account. Petitioner's broodmares are insured.

Although she has enjoyed some success in breeding and selling Appaloosas, petitioner has never realized a profit during any taxable year. She attributes this lack of any profits to problems of the National Appaloosa Horse Club during the 1980's and more recent setbacks with her own broodmares. Petitioner does not ride Appaloosas for recreational purposes.

On Schedules C attached to her 1994, 1995, and 1996 Federal income tax returns, petitioner reported the following amounts:

---

[3] One of petitioner's trainers, Rusty Hadden, testified that one of the benefits of training horses in Arizona is the opportunity to show the horses throughout the year.

|                    | 1994      | 1995      | 1996      |
|--------------------|-----------|-----------|-----------|
| Gross receipts     | $1,140    | $3,895    | $336      |
| Cost of goods sold | 0         | (3,500)   | 0         |
| Gross profit       | 1,140     | 395       | 336       |
| Show winnings      | 806       | 0         | 0         |
| Gross income       | 1,946     | 395       | 336       |
| Expenses           | (36,538)  | (36,628)  | (38,998)  |
| Net profit (Loss)  | (34,592)  | (36,233)  | (38,662)  |

In the statutory notices of deficiency, respondent increased petitioner's taxable income for 1994, 1995, and 1996 by $36,538, $40,128, and $38,998, respectively. Respondent determined that petitioner would be allowed Schedule A miscellaneous itemized deductions for the expenses of her Appaloosa breeding and selling activity to the extent of her gross income, but respondent did not allow any such deductions on the ground that such allowable deductions combined with her other itemized deductions are less than her standard deductions for her respective taxable years.

Section 183(a) disallows any deduction attributable to an activity not engaged in for profit, except as provided in section 183(b). Section 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit are to be allowed. Section 183(b)(2) further provides that deductions which would be allowable only if such activity were engaged in for profit are to be allowed, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable under section 183(b)(1). For purposes of section 183, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the

taxable year under section 162 or under paragraph (1) or (2) of section 212.  Sec. 183(c).

Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Where an activity does not constitute a trade or business, section 212 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or the management, conservation, or maintenance of property held for the production of income.  Sec. 212(1) and (2).

In order to establish that an activity was engaged in for profit, the Court of Appeals for the Ninth Circuit, to which this case is appealable, has stated that the taxpayer must show that she engaged in the activity with the primary purpose of making a profit.  Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212.  The taxpayer must enter into the activity "with the dominant hope and intent of realizing a profit".  Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472.

Petitioner bears the burden of proving the requisite intent. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Johnson v. Commissioner, 59 T.C. 791, 813 (1973), affd. 495 F.2d 1079 (6th Cir. 1974).  Whether a taxpayer is engaged in an activity with the requisite profit objective is determined from all the facts

and circumstances.  Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs.  The proper focus of the test is the taxpayer's subjective intention, but objective indicia may be used to determine the taxpayer's true intent.  Independent Electric Supply, Inc. v. Commissioner, supra at 726.  In this regard, more weight is generally given to objective facts than to the taxpayer's mere statement of her intent.  Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in deciding whether an activity is engaged in for profit.  These factors include:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b), Income Tax Regs.  This list of factors is not exclusive, and other factors may be considered in determining whether an activity is engaged in for profit.  The factors are not merely a counting device where the

number of factors for or against the taxpayer is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Taube v. Commissioner, 88 T.C. 464, 480 (1987); sec. 1.183-2(b), Income Tax Regs. Not all factors are applicable in every case, and no one factor is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

Manner in Which Activity Conducted

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity was engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. We find that petitioner was very serious about her Appaloosa breeding and selling activity and conducted it in a businesslike manner. She maintained detailed records of her expenses which she relied upon in making business decisions. She maintained a separate bank account for her Appaloosa breeding and selling activity and did not commingle the proceeds of the activity with her personal funds, with the exception of one admitted instance for which she adequately accounted. We find that petitioner had a business plan, which was to breed horses for sale to young and nonprofessional adult riders. In addition, we find that she continuously modified her business plan to contain costs and to give herself every opportunity to make a profit. We find that this factor favors petitioner.

Expertise of the Taxpayer or Her Advisers

Preparation for an activity by extensive study or consultation with experts may indicate a profit motive where the taxpayer conducts the activity in accordance with such study or advice. Sec. 1.183-2(b)(2), Income Tax Regs. We find that the record amply demonstrates that petitioner has developed an expertise in Appaloosa pedigrees and bloodlines. She has consulted with and followed the advice of acknowledged experts in her industry with respect to the economics of breeding and selling Appaloosas. She has regularly read "The Appaloosa Journal", published by the National Appaloosa Horse Club. She has also served as a judge at Appaloosa shows. We find that this factor favors petitioner.

Time and Effort Expended

The fact that the taxpayer devotes much of her personal time and effort to carrying on an activity, particularly if the activity does not have substantial recreational aspects, may indicate a profit motive. Sec. 1.183-2(b)(3), Income Tax Regs. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity. Id. Petitioner devoted nearly all of her personal time to her Appaloosas, including her 4 weeks of vacation from her job as a registered nurse. During the taxable years in issue, her billing service dwindled, leaving her more time to devote to her Appaloosas. She selectively hired highly

qualified individuals, such as trainer Rusty Hadden, to develop her Appaloosas.  We find that this factor favors petitioner.

## Expectation That Assets May Appreciate

An expectation that assets used in the activity will appreciate in value may indicate a profit objective.  Sec. 1.183-2(b)(4), Income Tax Regs.  Petitioner clearly expected her broodmares and their offspring to appreciate in value.  We find that this factor favors petitioner.

## Past Success in Other Similar or Dissimilar Activities

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that she is engaged in the present activity for profit, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Petitioner successfully operated a billing service for a number of years until her customers retired and/or moved out of the area.  We find that this factor favors petitioner.

## Taxpayer's History of Income and Losses

Petitioner has never had a profitable year.  She has had sporadic sales over the years.  Her net losses have continued beyond the customary startup period for a horse breeding and selling activity.  We find that the circumstances within the Appaloosa market and her personal setbacks do not fully explain her long series of losses.  Cf. sec. 1.183-2(b)(6), Income Tax Regs.  We find that this factor favors respondent.

Financial Status of the Taxpayer

The fact that the taxpayer does not have substantial income or capital from other sources may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner earned a modest salary as a registered nurse. Yet, petitioner did derive some tax benefits from her losses to the extent that such losses offset her other income. We find that this factor is neutral.

Elements of Personal Pleasure or Recreation

Petitioner does not ride horses. Although her Appaloosas do provide a social outlet for meeting other people, we find that any personal pleasure or recreation that petitioner derived from her Appaloosas is insignificant in comparison to her business motives. We find that this factor favors petitioner.

After weighing the above factors, we find that the objective facts in the record support rather than detract from petitioner's asserted intention of making a profit from her Appaloosa breeding and selling activity. We conclude that petitioner has proved that she engaged in her Appaloosa breeding and selling activity during the taxable years in issue with the dominant hope and intent of realizing a profit.

To reflect the foregoing,

Decision will be entered for petitioner.